United States District Court
Southern District of Texas
**ENTERED**
February 27, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARVIN YOUNG, (TDCJ # 01323226), | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | CIVIL ACTION NO. H-24-1152 |
| BRYAN COLLIER, *et al.,* | § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

The plaintiff, Marvin Young, (TDCJ #1323226), is currently in the custody of

the Texas Department of Criminal Justice—Correctional Institutions Division

("TDCJ"). Proceeding *pro se* and *in forma pauperis*, he filed an amended civil rights

complaint under 42 U.S.C. § 1983. (Dkt. 12). Broadly speaking, Young's amended

complaint alleges that four TDCJ officials and a UTMB mental health counselor at

the Wayne Scott Unit conspired to fail to protect him from violence from another

inmate, that he was injured by that inmate as a result of the conspiracy, and that two

of the TDCJ officials and four UTMB medical officials ignored his injuries and

denied him medical care.[1] (*Id.*). After the screening required by 28 U.S.C. § 1915A,

---

[1]Young's initial complaint named multiple additional defendants and asserted multiple additional claims. (Dkt. 1). However, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect." *See King v. Dogan*, 31 F.3d 344, 346

the Court ordered service of process on the defendants, and they responded with a motion to dismiss. (Dkt. 23). Young filed a response to the motion. (Dkt. 34). Based on the Court's review of the motion and response, the pleadings, the record, and the law, the Court grants the defendants' motion to dismiss in part and denies it in part. The reasons are explained below.

## I.   **BACKGROUND**

Young is currently an inmate at the Willacy County State Jail, (Dkt. 31), but he was previously an inmate at TDCJ's Wayne Scott Unit. (Dkt. 12). Young alleges that the Wayne Scott Unit is a 600-bed facility for inmates with chronic psychiatric conditions. (*Id.* at 20). He alleges that because inmates are assigned to this Unit based on their complex mental health diagnoses, the prison officials are experienced in dealing with inmates who are often "unpredictable" and violent against others. (*Id.*). Young was housed in the D3 Pod of the Unit. Based on the nature of his chronic psychiatric conditions, the D3 Pod's mental health provider had designated him to have "no cell pairing," meaning he would be assigned to a single cell with no cellmates. (*Id.* at 4).

In June 2022, Young alleges that he filed a grievance against a UTMB medical provider, which he alleges triggered a conspiracy against him by numerous TDCJ

---

(5th Cir. 1994). Therefore, the defendants and claims identified in Young's initial complaint but not identified in the amended complaint are no longer before the Court.
2/41

officials, including Sergeant LaToy Lavan, Captain Brandon Newell, Captain Autumn Watson, Classification Officer Alma Torres, Mental Health Therapist Tracy Martinez, and Nurses Candice Thomas, Mariamma Varughese, Mary Paningbatan, and Ruth Romero-Wilson. (*Id.* at 8). He alleges that these officials conspired to deprive him of his single cell. (*Id.*). As a result of the conspiracy, another inmate was placed in his cell and that inmate assaulted him, causing severe injuries to his eye. (*Id.*). The defendants then refused to provide him with medical care for his injuries. (*Id.*). Young alleges that the defendants then conspired to falsify TDCJ records to cover up their actions and their conspiracy. (*Id.*).

More specifically, Young alleges that on June 8, 2022, Sergeant Lavan separated two other inmates who were fighting: Odell Hall and Patrick McDonald.[2] (*Id.* at 8-9). Apparently needing to find a place to relocate one of those two inmates, Sergeant Lavan approached Young and asked, "Why you get a cell all by yourself?" (*Id.* at 9). Young responded that the D3 Pod mental health provider had assigned him a single cell as part of his treatment. (*Id.*). Sergeant Lavan responded that she needed to find a cell for another inmate, so "you getting a cellie today." (*Id.*). Young responded that he was in a single cell in part because he had been attacked by certain

---

[2]Young's amended complaint contains extensive allegations about McDonald's background and mental health conditions. (Dkt. 12, p. 21). Because Young does not identify the source of this information about McDonald and because the specific allegations are not relevant to his claims, the Court declines to include them here.

groups of inmates. (*Id.*). Sergeant Lavan replied that Young could either go to a seclusion cell or write a grievance because he was going to "get a cellie today." (*Id.*). She then told Young that she was aware that he knew how to write grievances and he could do that if he did not like having a cellmate. (*Id.*).

Young alleges that Sergeant Lavan contacted Captain Newell, who approved housing McDonald with Young after consulting with Classification Officer Torres. (*Id.*). Once that was done, Sergeant Lavan transferred McDonald and his belongings to Young's cell. (*Id.*).

Young alleges that on June 9 or 10, after McDonald was already housed in his cell, Sergeant Lavan consulted with D3 Pod Mental Health Therapist Tracy Martinez about McDonald being placed in Young's cell. (*Id.* at 18). After that discussion, Therapist Martinez "acquiesced" in the decision to house McDonald and Young together. (*Id.*). Young alleges that Therapist Martinez did not have the authority to make that decision alone, but she did it anyway. (*Id.*).

Young also alleges that on June 9, he submitted I-60 "Inmate Request to Officials" forms directed to Major Terry, Classification Officer Torres, and Therapist Martinez, explaining his fears of being assaulted by McDonald. (*Id.* at 15-16). He requested that either he or McDonald be reassigned so that he could return to the single cell that was part of his treatment plan. (*Id.*). Despite this request, nothing was done.

4/41

Two days later, on June 11, 2022, McDonald started making lewd sexual gestures at Young. (*Id.* at 9-10). Young went to the cell door and started knocking on it to try to get the attention of a corrections officer. (*Id.*). As Young stood at the door, McDonald attacked him from behind, digging his fingers into Young's left eye. (*Id.*). Young struggled for a bit and then was able to get away, at which point he punched McDonald in self-defense. (*Id.* at 11). A detention officer arrived soon after, removed McDonald from the cell, and told Young that he would send a nurse to check his eye. (*Id.*). Young alleges that his eye was clearly injured in the attack. (*Id.*). It was swollen and bruised, and the eyeball itself was hemorrhaged. (*Id.*). He had no peripheral vision, his eye had a gritty feel to it, and it was tearing. (*Id.* at 11-12).

In response to the detention officer's call for assistance, Sergeant Lavan and Captain Newell arrived at Young's cell. (*Id.* at 12). Sergeant Lavan looked at Young's eye and said, "Look at that eye; he got your a*s good, didn't he?" (*Id.*). Sergeant Lavan told Young that he was being sent to seclusion because he had been the aggressor in the fight. (*Id.*). Young responded that he had not been the aggressor, and he asked to be assigned to high security detention protection rather than seclusion. (*Id.*). Sergeant Lavan and Captain Newell both denied this request. (*Id.*).

Young alleges that by that time, Captain Watson had arrived at the scene. (*Id.*). Captain Watson pulled Sergeant Lavan away from Young, and the two had a

discussion that Young could not hear. (*Id.* at 12-13). As they talked, Nurse Thomas arrived to look at Young's eye and provide a post-incident medical check. (*Id.* at 13). Nurse Thomas glanced into the cell, but Captain Watson pulled her away from the cell by the arm rather than letting her check Young. (*Id.*). Young could not hear their entire conversation, but he did hear Nurse Thomas say, "What about his eye, Sergeant Lavan?" (*Id.*). Captain Watson, Sergeant Lavan, and Nurse Thomas then left the area, with no one having examined Young's eye. (*Id.*). Young alleges that at no time on June 11 did anyone either examine his eye or conduct the post-incident medical evaluation required by TDCJ rules. (*Id.*). Further, TDCJ rules require prison officials to separate inmates who have fought, but Sergeant Lavan and Captain Watson left McDonald in the cell with Young after the assault. (Dkts. 12, p. 13; 34, p. 9).

After the incident, Young again submitted I-60s to Major Terry, Officer Torres, and Therapist Martinez, complaining about his placement with McDonald. (Dkt. 12, p. 16). On the morning of June 13, McDonald was relocated to another cell. (*Id.*).

Young alleges that he saw mental health provider Dr. Ihiza on June 14, 2022. (*Id.*). Dr. Ihiza expressed alarm at Young's eye injury and told Young that he needed to be seen by Unit Medical Provider Dr. Rothrock as soon as possible. (*Id.*). Young told Dr. Ihiza that he had seen Nurse Varughese over the weekend, but she refused

6/41

to examine his eye or provide any treatment. (*Id.*) Instead, she told him that he had to "place a sick call" to be seen. (*Id.*). Young told Dr. Ihiza that he had submitted a sick-call request, but no one had contacted him yet about an appointment. (*Id.*).

Later on June 14, Young saw Nurse Varughese again during insulin distribution. (*Id.* at 16-17). She ignored Young's eye condition and refused to answer any of his questions. (*Id.* at 17). On June 15, Young saw Nurse Varughese yet again during insulin distribution. (*Id.*). When Young asked about his sick-call requests, Varughese told him to "stop asking" and that she would "tell the provider about your damned eye." (*Id.*). Nevertheless, no one contacted Young about an appointment or arranged for him to see a provider. (*Id.*).

On June 22, Young saw Dr. Ihiza again, and Dr. Ihiza expressed concern that Young had not yet received medical care for his eye. (*Id.*). He told Young that he would speak with Nurse Varughese about scheduling an appointment with a provider. (*Id.*). Despite this, no one contacted Young about an appointment or arranged for him to see a provider. (*Id.*).

On June 23, Young saw Mental Health Supervising Therapist Monica Greer, and she asked him about his eye. (*Id.*). When Young told her that he had repeatedly asked Nurse Varughese about an appointment but that nothing had been done, Greer indicated that she would speak with Nurse Varughese. (*Id.*). On June 27, Young submitted another sick-call request, which Nurse Varughese again ignored or

"trashed." (*Id.* at 17-18).

On July 1, Young submitted yet another sick-call request. (*Id.* at 17-18). That request was returned to him on July 3 with a notation stating that Nurse Paningbatan had seen him. (Dkts. 12, p. 18; 1, p. 76). Young states that this is false, that he was never seen by Nurse Paningbatan or any other nurse, and that he still had not been examined by any medical provider or provided with any treatment for his eye injury. (Dkt. 12, p. 18).

Records attached to Young's original complaint, and incorporated by reference into his amended complaint, show that he filed a Step 1 grievance on July 7, 2022, about being housed with another inmate in violation of his mental health restrictions. (Dkt. 1, pp. 72-73). In that grievance, Young stated that he had been denied medical attention for his eye since the assault on June 11. (*Id.* at 72). The response stated that there was no evidence to support Young's claim that Sergeant Lavan "incited" McDonald to attack Young, but it did not address his claim concerning the lack of medical care. (*Id.* at 73). In his Step 2 grievance appeal, Young repeated his allegations that Sergeant Lavan knew that housing McDonald with Young would put Young in danger, but she did it anyway. (*Id.* at 74-75). The response states that an inmate protection investigation was completed and there was no evidence to support Young's allegations. (*Id.* at 75). There was again no mention about the failure to provide Young with medical care.

Also attached to Young's initial complaint and incorporated into his amended complaint is a grievance from October 21, 2022, in which Young asserted that he had been denied medical care for his eye from June 14 through June 22. (*Id.* at 80-81). The response indicates that TDCJ records did not show that Young submitted any sick-call requests between June 3 and July 2, 2022. (*Id.* at 81). The response states that he was seen by nursing staff on July 3 and referred to a provider, but he was not seen by the provider for reasons unknown. (*Id.*). The response also indicates that Young was scheduled for an appointment with a specialist at Hospital Galveston, but he refused the appointment. (*Id.*). Young alleges that this response is based, at least in part, on a treatment refusal form allegedly signed by him and witnessed by Nurse Romero-Wilson. (Dkt. 12, p. 20). But Young alleges that Nurse Romero-Wilson worked in the E2 Pod, where Young was not assigned until November 2022. (*Id.*). He alleges that this form is a forgery. (*Id.*).

Young alleges that the injury to his eye progressed without treatment to the point that he became blind in that eye. (*Id.* at 19). He alleges that he also suffered a deteriorating mental state because of the uncertainty of his future vision. (*Id.* at 20, 22). Ultimately, in May 2023 he underwent surgery to repair the eye and restore his vision. (*Id.* at 22).

Young alleges that Sergeant Lavan knew that McDonald was violent based on his history and his altercation with Hall earlier that same day. (*Id.* at 14). Young

9/41

alleges that she also knew that he had been assigned to a single cell by Unit mental health professionals.  (*Id.* at 15).  Despite this, Sergeant Lavan failed to honor Young's classification and deliberately failed to protect him from harm by housing a known violent inmate in his cell. (*Id.* at 14-15).

Young alleges that Captain Newell also knew of the reasons for his single-cell assignment and knew of the altercation between Hall and McDonald, but he left the resolution of the housing issue solely up to Sergeant Lavan.  (*Id.*).  Young alleges that Captain Newell knew or should have known of Sergeant Lavan's propensity to let her personal agendas interfere with proper inmate management. (*Id.*).  He alleges that Captain Newell assisted in Sergeant Lavan's plan to ignore Young's single-cell designation and to house a violent inmate with Young.  (*Id.* at 14-15).

As to Captain Watson, Young alleges that when she learned of the altercation on June 11, she conspired with Sergeant Lavan to cover up the wrongs that had resulted in Young's injuries. (*Id.* at 15).

Young alleges that Therapist Martinez was familiar with his mental health conditions, and she knew that she was putting him in danger by allowing officials to house him with another inmate.  (*Id.* at 18-19).  Despite this knowledge, she acquiesced in Sergeant Lavan's request to remove the single-cell restriction and allow Sergeant Lavan to house McDonald with Young.  (*Id.*).

Young alleges that Nurses Thomas, Varughese, and Paningbatan each acted,

whether individually or together, to deny him medical care for his eye between June 11 and July 3. (*Id.* at 19). He alleges that Nurse Thomas "passed messages" to the other D3 Pod nurses to ignore the incident and his injury. (*Id.* at 13). Young also alleges that the nurses falsified medical records by "trashing" his sick-call requests and by falsely stating that he had been seen by Nurse Paningbatan when he had not. (*Id.* at 19).

Young claims that all these actions, whether considered together or separately, violate his right to free speech, his right to be free from cruel and unusual punishment, and his right to equal protection. (*Id.* at 23). He seeks both compensatory and punitive damages, as well as injunctive relief, against each of the defendants in their official and individual capacities. (*Id.* at 4, 24-25).

In their motion to dismiss, the defendants contend that Young's claims against them in their official capacities are barred by sovereign immunity. (Dkt. 23, pp. 4-5). They contend that Young's claims against them in their individual capacities should be dismissed because he (1) fails to allege facts showing the personal involvement of Captain Newell, Captain Watson, Officer Torres, Therapist Martinez, Nurse Thomas, Nurse Paningbatan, and Nurse Romero-Wilson in any alleged constitutional violation; (2) fails to allege facts sufficient to state a claim for failure to protect against Sergeant Lavan; and (3) fails to allege facts sufficient to state a claim for deliberate indifference against Nurse Varughese. (*Id.* at 5-19). They

11/41

also allege, in a conclusory faction, that even if the facts are sufficient to state a claim for relief, they are protected from liability by the doctrine of qualified immunity. (*Id.* at 19-20).

In his response to the defendants' motion, Young alleges additional facts concerning his interactions with Sergeant Lavan before the events of June 2022 and McDonald's interactions with other inmates. (Dkt. 34, pp. 2-3). He alleges again that the defendants conspired against him, but he adds no additional facts to support this allegation. (*Id.* at 3-4). He also reiterates the claims from his amended complaint and asserts that his allegations are sufficient to state claims against the defendants. (*Id.* at 4-13). He further contends that the facts he alleges, taken as true, show that the defendants acted in an objectively unreasonable manner concerning both his cell assignment, their response to the fight with McDonald, and his medical care after the fight. (*Id.* at 5).

## II.    **LEGAL PRINCIPLES**

### A.    **Actions Under 42 U.S.C. § 1983**

Young brings his claims under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, the plaintiff must

(1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman,* 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983) (per curiam). The second element, which requires action "under color of state law," means that generally only *state* actors—not private parties—can be liable for violations of civil rights. *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.,* 765 F.2d 1278, 1283 (5th Cir. 1985).

### B.   Motion to Dismiss

The defendants move to dismiss Young's amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) challenges the court's jurisdiction to hear the case. *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Such a motion is properly granted when the court lacks the statutory or constitutional power to hear the case, such as when the claims are barred by a state's sovereign immunity. *See High v. Karbhari,* 774 F. App'x 180, 182 (5th Cir. 2019) (per curiam) (citing *Little v. KPMG LLP,* 575 F.3d 533, 540 (5th Cir. 2009), and *Meyers ex rel. Benzing v. Texas,* 410 F.3d 236, 240 (5th Cir. 2005)). Because a Rule 12(b)(1) motion challenges the

court's jurisdiction, "[w]hen a Rule 12(b)(1) challenge is filed with other Rule 12 motions, the court should address the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(6) is properly granted when the plaintiff's complaint fails to state a claim upon which relief can be granted. When a court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The district court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).

But to survive a motion to dismiss under Rule 12(b)(6), the complaint must include specific facts, not conclusory allegations. *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020). The complaint must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Gomez*, 18 F.4th at 775. A claim is plausible

on its face "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  If the facts alleged are

facially sufficient, "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable, and that a recovery is very

remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up).  But if the complaint

does not set forth "enough facts to state a claim to relief that is plausible on its face,"

it must be dismissed.  *Id.* at 570.

### C.    *Pro Se* Pleadings

Young is proceeding *pro se* in this action.  Pleadings filed by *pro se* litigants

are not held to the same stringent and rigorous standards as pleadings filed by

lawyers and instead must be liberally construed.  *See Haines v. Kerner*, 404 U.S.

519, 520 (1972) (per curiam); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

But even under a liberal construction, *pro se* plaintiffs "must properly plead

sufficient facts that, when liberally construed, state a plausible claim to relief, serve

defendants, obey discovery orders, present summary judgment evidence, file a

notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767

F.3d 475, 484 (5th Cir. 2014) (footnotes omitted).

## III.   DISCUSSION

### A.   Official Capacity Claims

The defendants move to dismiss all of Young's claims against them in their official capacities under the doctrine of sovereign immunity.  This doctrine applies differently to Young's claims for money damages and his claims for declaratory and injunctive relief.  But based on the nature of Young's claims, sovereign immunity bars both types of relief in this case.

#### 1.   Claims for Money Damages

Sovereign immunity bars actions against a state or state official for money damages unless Congress has abrogated such immunity or the state has specifically waived its immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  But Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Id.*  And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions.  *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) ("Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.  Texas has not consented by statute, and § 1983 does not abrogate state sovereign immunity.") (cleaned up).

The fact that Young has sued state employees, rather than the State of Texas

16/41

itself, does not change this analysis. When a state employee is sued in his or her

official capacity, the employing entity is the real party in interest for the suit. *See*

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits "generally

represent only another way of pleading an action against an entity of which an officer

is an agent" and are "treated as a suit against the entity"). Young's claims for money

damages against the defendants in their official capacities are construed as claims

against the State of Texas and are barred by the doctrine of sovereign immunity.

These claims are dismissed with prejudice under Rule 12(b)(1).

### 2.   Claims for Declaratory and Injunctive Relief

Sovereign immunity plays a lesser role in claims for declaratory and

injunctive relief. But Young's claims for such relief against the defendants are

barred by immunity in this case.

The Eleventh Amendment bars claims for declaratory or injunctive relief

against a state or state actor when those claims concern a state official's past actions

rather than an ongoing violation of federal law. *See Green v. Mansour*, 474 U.S. 64,

68 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). To determine whether the

plaintiff's claims for declaratory or injunctive relief are barred by the Eleventh

Amendment, "a court need only conduct a straightforward inquiry into whether the

complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535

U.S. 635, 645 (2002).  If the plaintiff seeks only relief based on past actions, the Eleventh Amendment bars the claim.  *See Green*, 474 U.S. at 71.

Young's amended complaint does not seek declaratory relief relating to an ongoing violation of federal law; instead, he seeks a declaration that the defendants' past actions violated his constitutional rights and he seeks relief based on those past actions.  Because this relief is not available against the defendants in their official capacities, Young's claims for injunctive relief against the defendants in their official capacities are barred by the Eleventh Amendment.  These claims are dismissed with prejudice under Rule 12(b)(1).

### B.    Individual Capacity Claims

Young's claims against the defendants in their individual capacities are not barred by sovereign or Eleventh Amendment immunity.  However, while Young clearly identifies some of his claims, he does not tie many of his factual allegations to a specific claim.  Recognizing that Young is proceeding *pro se*, the Court has liberally construed his amended complaint when determining what claims he is asserting against each individual defendant.  Based on that liberal construction, the Court now considers whether Young's claims contain sufficient facts to state a claim for relief under § 1983.

### 1.    The First Amendment Claim Against All Defendants

In his amended complaint, Young alleges, without elaboration, that the

18/41

defendants violated his First Amendment rights. (Dkt. 12, p. 23). This claim is dismissed for failing to state a claim upon which relief can be granted.

Reading Young's amended complaint as broadly as possible leads the Court to presume that his First Amendment claim arises from on his allegation that Sergeant Lavan housed McDonald with Young in retaliation for Young having filed a grievance against a medical staff member. The Court notes that prison officials may not retaliate against inmates who complain of prison conditions or official misconduct. *See Gibbs v. King,* 779 F.2d 1040, 1046 (5th Cir. 1986); *see also Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 864 (5th Cir. 2004). In addition, "retaliation by prison officials in response to an exercise of a prisoner's First Amendment rights may, itself, be a violation of the inmate's First Amendment rights." *Freeman*, 369 F.3d at 864 (citing *Bibbs v. Early*, 541 F.3d 267, 272 (5th Cir. 2008)).

But to state a claim for such retaliation, the prisoner must allege specific facts showing that he exercised a specific constitutional right and that the defendant intended to, and did, retaliate against the prisoner for his or her exercise of that right. *Id*; *see also McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Young's amended complaint contains no facts showing that Sergeant Lavan intended to retaliate against him for filing the grievance. He does not allege facts showing that Sergeant Lavan knew about the medical grievance, explaining how she would have

19/41

known about such a grievance, or explaining why she would have intended to retaliate against him filing that grievance. Further, Young alleges no facts showing that any of the other defendants knew about the alleged grievance or that they intended to retaliate against him for filing it. Young's conclusory statement that the defendants intended to retaliate against him, unsupported by any specific factual allegations, fails to state a claim upon which relief can be granted.[3] Young's claim against all the defendants for a violation of his First Amendment rights is dismissed with prejudice.

### 2.    The Equal Protection Claim Against All Defendants

Like Young's First Amendment claim, Young also alleges, without any elaboration, that the defendants violated his equal protection rights. (Dkts. 12, pp. 23; 34, p. 5). This claim is dismissed for failing to state a claim upon which relief can be granted.

The Equal Protection Clause of the Fourteenth Amendment requires that persons similarly situated be treated the same way. *See Dudley v. Angel*, 209 F.3d 460, 463 (5th Cir. 2000). To state a claim for an equal protection violation, the plaintiff must allege that a state actor intentionally discriminated against him

---

[3]Young alleges in other parts of his amended complaint that the defendants set him up to be attacked by McDonald because Young is heterosexual and some of them are not. These allegations contradict his claim of retaliation for filing grievances and do not support a conclusion that the defendants acted in violation of Young's First Amendment rights.

20/41

because of his membership in a protected class. *See Washington v. Davis*, 426 U.S.

229, 247-48 (1976); *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). In the

alternative, an equal protection claim may arise if the plaintiff can show that

"illegitimate animus or ill-will motivated" the defendants to intentionally treat him

differently from others who are similarly situated and that no rational basis exists for

the differing treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000) (per curiam). In either case, proof that individuals who were similarly

situated to the plaintiff were treated differently than the plaintiff is required. *See*

*Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (2000).

Young does not allege any facts showing that he is a member of a protected

class, nor does he show that he was treated differently from other inmates who were

similarly situated, whether due to ill-will, illegitimate animus, or otherwise. In the

absence of such allegations, his amended complaint fails to state a claim for a

violation of his equal protection rights. This claim against all defendants is

dismissed with prejudice.

### 3.    The Claim Against All Defendants for Falsifying Records

Young alleges that all of the defendants falsified records—either classification

records or medical records—to cover up their alleged misdeeds. Even taken as true,

these facts do not allege a constitutional violation and so cannot support a claim

under § 1983.

Falsifying prison records, standing alone, does not violate the Constitution. *See, e.g., Henderson v. Buttross*, Civil No. A-17-CV-436-LY, 2017 WL 2391806, at *3 (W.D. Tex. June 2, 2017) (falsifying documents is not a constitutional violation); *Fountain v. Thaler*, Civil No. 6:13cv958, 2015 WL 5168775, at *11 (E.D. Tex. Sept. 2, 2015) (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986), and dismissing a prisoner's claim that the defendants falsified grievances because such action does not violate the Constitution). Therefore, conclusory allegations that classification or medical records have been "falsified" are insufficient to state a claim upon which relief can be granted. *See Knighten v. Ott*, 69 F. App'x 657, 2003 WL 21355964 (5th Cir. 2003) (per curiam). Instead, a prisoner must allege how the falsified records violated his constitutional rights. *See, e.g., Gravely v. Speranza*, 219 F. App'x 213, 215 (3d Cir. 2007) (per curiam) (affirming the dismissal of prisoner's claim for falsified documents in part because the prisoner "did not give any indication as to what documents he believed were falsified or how their alleged falsification violated his constitutional rights"); *Fountain*, 2015 WL 5168775, at *11 (dismissing a claim based on falsification of grievance records when the prisoner failed to show that the falsification "violated any right protected by the Constitution").

Young does not allege facts showing that the falsification of his classification or medical records violated a right protected by the Constitution. The alleged

deletion of his assignment to a single cell is not a constitutional violation because inmates have no constitutional right to any particular housing assignment. *See Meachum v. Fano*, 427 U.S. 215, 228-29 (1976) (inmates do not have a constitutional right to a particular housing assignment); *Maxwell v. Almanza*, No. 1:18-cv-0179-BU, 2021 WL 5969409, at *3 (N.D. Tex. Nov. 10, 2021) (inmates do not have a constitutional right to housing in a particular unit); *Hill v. Phan*, No. 13-cv-0583, 2016 WL 7157367, at *3 (W.D. La. Nov. 9, 2016) (an inmate's disagreement with this cell and bunk assignment did not rise to the level of a constitutional violation), *report & recommendation adopted*, 2016 WL 7156779 (W.D. La. Dec. 7, 2016). In addition, to the extent that Young alleges that the deletion of his single-cell assignment was made in violation of TDCJ and/or UTMB policies, a defendant's failure to follow TDCJ and UTMB guidelines and policies, without more, does not constitute a constitutional violation. *See Williams v. Stephens*, 547 F. App'x 599, 600 (5th Cir. 2013) (per curiam) (citing *Hernandez*, 788 F.2d at 1158). Therefore, even if the defendants altered Young's housing assignment records and violated TDCJ policies in doing so, those facts do not state a claim for a constitutional violation that would support relief under § 1983.

Second, Young does not allege facts showing that he was denied medical care because of the alleged falsifications of his medical records. Instead, he affirmatively alleges that his medical records were falsified after the fact to cover up prior

23/41

violations of his right to proper medical care.    Therefore, any constitutional violations Young may have suffered predated the change in the records.  Because the alleged falsification did not, in and of itself, violate the Constitution, Young has not stated a claim for which the defendants would be liable.

For both reasons, Young's claims against all the defendants based on the alleged falsification of his classification and medical records are dismissed with prejudice for failing to state a claim upon which relief can be granted.

### 4.    The Claims Against Sergeant Lavan, Captain Newell, Captain Watson, Officer Torres, and Therapist Martinez for Denial of "Mental Health Provision"

Young alleges that Sergeant Lavan, Captain Newell, Captain Watson, Officer Torres, and Therapist Martinez violated his rights by "denying him his mental health provision" for assignment to a single cell.  But as explained above, Young has no constitutional right to any particular cell assignment.  *See Meachum*, 427 U.S. at 228-29; *Maxwell*, 2021 WL 5969409, at *3; *Hill*, 2016 WL 7157367, at *3.

Because the deletion of Young's previously approved single-cell housing designation, even if true, does not violate a constitutional right, his claims against Sergeant Lavan, Captain Newell, Captain Watson, Officer Torres, and Therapist Martinez for "denial of his mental health provision" are dismissed with prejudice for failing to state a claim upon which relief can be granted.

**5.     The Claim Against Captain Newell and Officer Torres for Failure to Supervise**

Young alleges that Captain Newell and Officer Torres should be held liable for their failure to supervise Sergeant Lavan concerning the decision to place McDonald in his cell. (Dkt. 12, pp. 14-15). These claims are dismissed because Young fails to allege facts sufficient to support a claim for a failure to supervise.

To hold a supervisory prison official liable under § 1983, the plaintiff must allege facts showing (1) the supervisor's personal involvement in a constitutional deprivation, and either (2) a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) that the supervisory official implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *See Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Only the direct actions or omissions of the supervisory official, not the actions of his or her subordinates, will make that official individually liable under § 1983. *See Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999).

To the extent that Young seeks to hold Captain Newell and Officer Torres liable based solely on the actions of Sergeant Lavan, he fails to state a claim against either of them upon which relief may be granted. In addition, Young alleges no facts

25/41

showing that Captain Newell's approval of Sergeant Lavan's decision to house

McDonald with Young or Officer Torres's after-the-fact amendment of Young's

classification status violated any of his constitutional rights. Having failed to allege

facts showing that either Captain Newell or Officer Torres personally acted in

violation of his constitutional rights, Young fails to state a claim against them for

supervisory liability. The motion to dismiss these claims is granted, and Young's

claims for supervisory liability are dismissed with prejudice.

### 6.   The Claim Against Sergeant Lavan for Failure to Protect

Young alleges that Sergeant Lavan failed to protect him from the attack by

McDonald by housing McDonald with Young despite knowing of McDonald's

violent tendencies and Young's protective housing classification. These allegations

are sufficient to state a claim and survive the motion to dismiss.

Under the Eighth Amendment, prison officials have a duty "to protect

prisoners from violence at the hands of other prisoners." *Williams v. Hampton*, 797

F.3d 276, 280 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825,

833 (1994)). To establish a violation of this right, an inmate must show (1) "that he

is incarcerated under conditions posing a substantial risk of serious harm," and

(2) that the prison official acted with "deliberate indifference to inmate health and

safety." *Id.* (quoting *Farmer*, 511 U.S. at 834). To establish deliberate indifference,

the plaintiff must allege facts showing that the prison official was aware that the

plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Farmer*, 511 U.S. at 847).

Young alleges that Sergeant Lavan was aware of the sometimes violent and unpredictable nature of the inmates at the Wayne Scott Unit.  She knew that McDonald had a history of violence, and she had just been forced to break up a fight between him and inmate Hall.  She also knew that Young was assigned to a single cell by the D3 Pod mental health team because of his mental health conditions and for his protection.  Despite this knowledge, she intentionally moved McDonald into the cell with Young, essentially ignoring the single-cell assignment that was part of Young's mental health treatment program.  These allegations, taken as true as they must be at this stage of the litigation, tend to show that Sergeant Lavan was aware of facts giving rise to an inference that Young faced a substantial risk of serious harm if she moved McDonald into his cell and she failed to take reasonable steps to reduce that risk.  These allegations are sufficient at this stage of the proceedings to state a claim for a failure to protect, and Sergeant Lavan's motion to dismiss this claim is denied.

### 7.     The Claims Against Sergeant Lavan and Captain Watson for Denial of Medical Care

Young alleges that Sergeant Lavan and Captain Watson violated his

constitutional rights by denying him necessary medical care for his eye injury after the fight with McDonald.   Young's amended complaint contains sufficient allegations to permit this claim against these defendants to proceed.

The Eighth Amendment protects prisoners from cruel and unusual punishment arising from a prison official's deliberate indifference toward a prisoner's injuries or pain. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To show that a prison security official was deliberately indifferent to an inmate's need for medical care, the plaintiff "must demonstrate that the official is aware that an 'inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Davis*, 35 F.4th at 963 (quoting *Farmer*, 511 U.S. at 847 (cleaned up)). This deliberate indifference standard is "extremely high." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998); *see also Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010). Instead, to obtain relief from a prison security official based on that official's deliberate indifference to a medical need, the plaintiff must show that the official intentionally delayed or denied access to medical care or intentionally interfered with the treatment once prescribed. *See Estelle*, 429 U.S. at 104-05.

Young's amended complaint alleges that Sergeant Lavan and Captain Watson

responded to his cell when they heard the fight between him and McDonald. He alleges that they both saw that his left eye was swollen and seriously bruised and that it was obvious that he needed medical attention for that injury. Despite this, he alleges that Sergeant Lavan and Captain Watson stood outside the cell, mocking his injury and laughing between themselves. He also alleges that when Nurse Thomas arrived to provide a medical check, Sergeant Lavan and Captain Watson pulled her away from the door and prevented her from checking on Young's injuries. As they turned to leave the area, Nurse Thomas asked Sergeant Lavan, "What about his eye?" Even with that question, Sergeant Lavan and Captain Watson refused to allow Nurse Thomas to provide medical care for, or even to conduct an evaluation of, Young's injuries.

These allegations, taken as true at this stage of the proceedings, are sufficient to state a claim for a denial of medical care on the part of Sergeant Lavan and Captain Watson. Their motion to dismiss this claim against them is denied.

### 8.    The Claims against Nurse Thomas, Nurse Varughese, Nurse Paningbatan, and Nurse Romero-Wilson for Deliberate Indifference

Young alleges that Nurse Thomas, Nurse Varughese, Nurse Paningbatan, and Nurse Romero-Wilson were deliberately indifferent to his need for medical care for his eye after the fight. While his claims against Nurse Varughese may proceed, he fails to state a claim against the other three defendants. The claims against the other

29/41

three defendants are dismissed with prejudice.

As explained above, the Eighth Amendment protects prisoners from cruel and unusual punishment arising from a prison official's deliberate indifference toward a prisoner's injuries or pain. *See Estelle*, 429 U.S. at 105. To state a claim for deliberate indifference against a prison medical provider, the prisoner must allege facts showing that the provider acted with "deliberate indifference" to a "serious medical need" in a manner that "constitutes the unnecessary and wanton infliction of pain[.]" *Id.* at 104 (cleaned up); *see also Farmer*, 511 U.S. at 834 (emphasizing that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment") (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1988)). As with prison security officials, the standard for deliberate indifference by prison medical providers is "extremely high." *Domino*, 239 F.3d at 756. "Deliberate indifference is more than mere negligence or even gross negligence." *Brown,* 623 F.3d at 255. "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe*, 153 F.3d at 219. Neither do "[u]nsuccessful medical treatment, acts of negligence, . . . medical malpractice" or "a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (cleaned up). Instead, to obtain relief for a constitutional violation based on deliberate indifference, the prisoner must show that the prison medical provider "refused to

30/41

treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (cleaned up).

Young's complaint does not allege any facts to show deliberate indifference on the part of Nurse Paningbatan or Nurse Romero-Wilson. Young alleges only that Nurse Paningbatan's name was written on a sick-call sheet that was falsified and that Nurse Romeo-Wilson witnessed a treatment refusal form that Young alleges is falsified. As explained above, the alleged falsification of records is not a constitutional violation, and the facts alleged do not meet the high standard required to show deliberate indifference. Young alleges no facts tending to show that either Nurse Paningbatan or Nurse Romero-Wilson refused to treat him, ignored his complaints, intentionally treated him incorrectly, or otherwise disregarded his serious medical needs. The claims for deliberate indifference against Nurse Paningbatan and Nurse Romero-Wilson are dismissed with prejudice.

As to Nurse Thomas, Young alleges that she came to his cell on the day of the fight, peered in at him through the cell window, but was pulled away by Sergeant Lavan and Captain Watson before she could provide any care. Shortly thereafter, Young heard Nurse Thomas say, "What about his eye, Sergeant Lavan?" Ultimately, Nurse Thomas left the pod without checking Young's eye. These factual allegations, even accepted as true, do not show deliberate indifference. At best, they

show that Nurse Thomas tried to provide medical care and was prevented from doing so by Sergeant Lavan and Captain Watson. At worst, they show that Nurse Thomas was negligent for not ensuring that Young received treatment later that day. While these allegations may show that Nurse Thomas failed to treat Young, they do not show that she ignored his complaints, intentionally treated him incorrectly, or displayed a wanton disregard for his serious medical needs. Young's claim against Nurse Thomas for deliberate indifference is dismissed with prejudice for failing to state a claim.

But the facts are different as to Young's allegations against Nurse Varughese. Young alleges that he twice personally asked Nurse Varughese to schedule an appointment with a provider for him when she was dispensing medications, but she refused. Instead, she told him to submit a sick-call request. But Young alleges that when Nurse Varughese received at least two of his sick-call requests, she "trashed" them rather than scheduling an appointment with a provider. Young alleges that two mental health providers also personally asked Nurse Varughese to schedule an appointment for Young to see a medical provider, and she either failed or refused to do so. Taken as a whole, these allegations are sufficient to show that Nurse Varughese ignored Young's complaints, refused to treat him, and displayed a wanton disregard for his serious medical needs. Because these allegations are sufficient to state a claim for deliberate indifference, Nurse Varughese's motion to

32/41

dismiss this claim against her is denied.

### 9.    The Conspiracy Claim Against All Defendants

Finally, Young alleges that each of the defendants should be held liable for

the acts of all the other defendants because the defendants were in a conspiracy

against him.  His factual allegations fail to state a claim for conspiracy.

A conspiracy by itself is not actionable under § 1983.  *See Pfannstiel v. City*

*of Marion,* 918 F.2d 1178, 1187 (5th Cir. 1990); *Tittle v. Raines*, 231 F. Supp. 2d

537, 553 (N.D. Tex. 2002), *aff'd,* 69 F. App'x 658 (5th Cir. 2003).  Instead, to state

a conspiracy claim under § 1983, the plaintiff must allege facts showing: (1) an

agreement between the defendants to commit an illegal act, and (2) an actual

deprivation of the plaintiff's constitutional rights in furtherance of that agreement.

*See Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995) (per curiam); *see also*

*Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019) (per curiam).  The

plaintiff must allege specific facts that tend to show an agreement or common motive

between the defendants.  *See Montgomery*, 759 F. App'x at 314; *Young v. Biggers*,

938 F.2d 565, 569 (5th Cir. 1991).  Conclusory allegations that do not reference

specific facts are not sufficient to state a conspiracy claim under § 1983.  *See*

*Montgomery,* 759 F. App'x at 314; *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24

(5th Cir. 1982).  And although the Court, at the motion to dismiss stage, must accept

all well-pleaded facts as true and view them in the light most favorable to the

plaintiff, a complaint "that offers labels and conclusions" or "naked assertion[s] devoid of further factual enhancement" does not state a claim for purposes of Rule 12(b)(6). *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) ("Allegations that are merely conclusory, without reference to specific facts, will not suffice" to establish a § 1983 conspiracy claim).   Therefore, to establish his conspiracy claim, Young was required to plead specific, nonconclusory facts that establish that the defendants entered into an agreement to violate his constitutional rights and then took actions that did so.

But Young's amended complaint fails to allege any specific facts tending to show an agreement among the defendants.  While Young repeatedly alleges that the defendants conspired with each other, he alleges no facts to support this conclusory allegation.  His factual allegations regarding the events of June 8 to 11 do not show that the defendants had any agreement to violate his civil rights either before or after the fight with McDonald.  The simple fact that two or more TDCJ officials were involved in decisions concerning Young's housing and medical care does not, standing alone, establish an agreement between them to violate Young's constitutional rights.  Young's amended complaint alleges only the possibility of a conspiracy, without specific factual allegations of an agreement to render such a claim plausible.  His conspiracy claim is "at best, speculative and conclusory," and

34/41

it cannot survive a motion to dismiss.    Accordingly, Young's conspiracy claim against all the defendants is dismissed with prejudice for failing to state a claim upon which relief can be granted.

### C.    The Defense of Qualified Immunity

In their motion to dismiss, the defendants contend that even if one or more of Young's claims sufficiently states a claim for relief, they are entitled to dismissal based on qualified immunity because Young has failed to show that the defendants' actions were objectively unreasonable. (Dkt. 23, pp. 19-21).    Based on the analysis above, the only claims remaining in this action are Young's failure-to-protect claim against Sergeant Lavan, his claims for denial of medical care against Sergeant Lavan and Captain Watson, and his claim for deliberate indifference against Nurse Varughese.   The Court will consider the qualified immunity defense only as to those claims.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established right." *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 322 (5th Cir. 2023) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).    Determining whether qualified immunity protects an official in a particular situation involves two steps: "first we ask whether the officer's alleged conduct has violated a federal right; . . . second we ask whether the right in question was 'clearly established' at the time of

35/41

the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc)).

When qualified immunity is raised as a basis for dismissal in a Rule 12(b)(6) motion, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). "[A]n assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams,* 979 F.3d 262, 266 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)). Instead, "claims implicating qualified immunity are subject to the same [Federal] Rule [of Civil Procedure] 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims." *Id*. Therefore, to overcome the qualified-immunity defense, the plaintiff must allege facts tending to show that the defendants violated the plaintiff's constitutional rights and that the defendant's actions were objectively unreasonable in light of clearly established law. *See Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).

In the context of a failure-to-protect claim, the law was clearly established in June 2022 that "prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 596, 592

36/41

(5th Cir. 2006) (citing *Farmer*, 511 U.S. at 832-33). The only questions before this court at this stage of the proceedings are whether Young has alleged sufficient facts to show that Sergeant Lavan knew Young faced a substantial risk of harm from McDonald and whether her actions were objectively unreasonable in light of this clearly established law.

As explained above, Young alleges that Sergeant Lavan knew the general nature of the inmates housed at the Wayne Scott Unit, she knew that Young had been assigned a single cell by the D3 mental health staff as part of his treatment plan and for his safety, and she knew that McDonald had just been in a physical fight with another inmate. Despite this, Sergeant Lavan overrode Young's housing designation and moved McDonald into Young's cell immediately after McDonald's fight with Hall. Sergeant Lavan does not contend that there were no other available cells, nor does she explain why it was reasonable to override Young's single-cell designation assigned by the mental health staff in that instance.

At this stage of the proceedings, the Court must accept Young's allegations as true. And taken as true, these allegations tend to show that Sergeant Lavan knew that Young faced risks that entitled him to a single cell, yet she affirmatively overrode that designation and housed a violent inmate with him. Considering her obligation to protect inmates from violence by other inmates, this decision was objectively unreasonable when considered in light of all the facts alleged. Sergeant

37/41

Lavan is not entitled to dismissal of the failure-to-protect claim based on qualified immunity at this time.

As to Young's claims against Sergeant Lavan, Captain Watson, and Nurse Varughese for the denial of medical care, Young alleges that each of them saw the injury to his eye, heard his requests for medical care, and nevertheless denied him any care. It has been clearly established since at least 1976 that prison officials have an obligation under the Eighth Amendment to provide necessary medical care to inmates. *See Estelle*, 429 U.S. at 103. Young's allegations show that each of these three defendants was aware that Young had sustained a serious eye injury, yet each of them denied him any type of medical assistance despite his specific requests for treatment. Such unexplained denials of medical care are objectively unreasonable. These defendants are not entitled to the dismissal of these claims based on qualified immunity at this time.

While Young may not ultimately prevail on these claims, his factual allegations are sufficient to defeat a qualified immunity defense at the Rule 12(b)(6) stage. The motion to dismiss based on qualified immunity by Sergeant Lavan, Captain Watson, and Nurse Varughese is denied, but without prejudice to the defendants raising the issue in a motion for summary judgment if appropriate.

## IV.   **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

38/41

1. The defendants' motion to dismiss, (Dkt. 23), is **GRANTED** as to Young's claims against all defendants in their official capacities.  These claims are **DISMISSED with prejudice**.

2. The defendants' motion to dismiss, (Dkt. 23), is **GRANTED** as to Young's claims against all defendants in their individual capacities for violating his First Amendment rights; violating his Equal Protection rights; falsifying medical records, denying his "mental health provision," and conspiracy. These claims against all defendants are **DISMISSED with prejudice.**

3. The defendants' motion to dismiss (Dkt. 23), is **GRANTED** as to Young's claims against Captain Newell and Officer Torres in their individual capacities for a failure to supervise.  These claims are **DISMISSED with prejudice**.

4. The defendants' motion to dismiss, (Dkt. 23), is **GRANTED** as to Young's claims against Nurse Thomas, Nurse Paningbatan, and Nurse Romero-Wilson in their individual capacities for deliberate indifference.  These claims are **DISMISSED with prejudice.**

5. The defendants' motion to dismiss, (Dkt. 23), is **DENIED** as to Young's claim against Sergeant Lavan in her individual capacity for a failure to protect.

6. The defendants' motion to dismiss, (Dkt. 23), is **DENIED** as to Young's claims against Sergeant Lavan, Captain Watson, and Nurse Varughese in their

individual capacities for denial of medical care and deliberate indifference.

7. The remaining defendants must file an answer or other appropriate responsive pleading to the remaining claim within **thirty (30) days** from the date of this Order.

8. Within **thirty (30) days** after the defendants' answer is filed, the parties must disclose to each other all information relevant to the claims or defenses of any party. The parties must promptly file a notice of disclosure with the Court after such disclosure has taken place. No other discovery is allowed at this time except on further order of the Court.

9. The defendants must file any further dispositive motions, which may include a motion for summary judgment under Federal Rule of Civil Procedure 56, within **ninety (90) days** after the date the defendants' answers are due under this Order.

10. Young must respond to any further dispositive motions within **thirty (30) days** of the date on which the defendants mail Young his copy of the motion, as shown on the defendants' certificate of service. Young is advised that if any defendant files a motion for summary judgment, it is his burden to show that there are genuine disputes of material fact that preclude judgment as a matter of law in that defendant's favor. *See* FED. R. CIV. P. 56(a). Under this Court's Local Rule 7.4, Young's failure to respond to a motion filed by any

of the defendants "will be taken as a representation of no opposition." S.D.

Tex. R. 7.4. Young's failure to respond to the defendants' motion or motions

within the time limit may also result in dismissal of this action for want of

prosecution under Federal Rule of Civil Procedure 41(b).

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on ___Feb 27_____, 2025.


DAVID HITTNER
UNITED STATES DISTRICT JUDGE